**IN THE CIRCUIT COURT OF MILLER COUNTY, ARKANSAS**
**CIVIL DIVISION**

**RACHEAL CUELLAR** **PLAINTIFF**

**V.** **CASE NO.** 46CV-25-278-3

**UTC RAILCAR REPAIR SERVICES, LLC** **DEFENDANT**

# SUMMONS

THE STATE OF ARKANSAS TO DEFENDANT:

**UTC RAILCAR REPAIR SERVICES, LLC**
**300 S. Spring Street**
**Little Rock, AR 72201**

A lawsuit has been filed against you. The relief demanded is stated in the attached Complaint. Within 30 days after service of this summons on you (not counting the day you received it) — or 60 days if you are incarcerated in any jail, penitentiary, or other correctional facility in Arkansas — you must file with the clerk of this court a written answer to the complaint or a motion under Rule 12 of the Arkansas Rules of Civil Procedure.

The answer or motion must also be served on the plaintiff or plaintiff's attorney, whose name and address are: Bradley Hull, 502 Garrison Avenue, Fort Smith, AR 72901.

If you fail to respond within the applicable time period, judgment by default may be entered against you for the relief demanded in the complaint.

**Additional Notices Included:**______________________________

Address of Clerk's Office:
Miller County Circuit Clerk
400 Laurel Street Ste 109
Texarkana, AR 71854

SEAL OF CIRCUIT COURT MILLER COUNTY, ARKANSAS

CIRCUIT CLERK
Penny Kilcrease
[Signature of Clerk or Deputy Clerk]

Date: 05/16/2025

[SEAL]

**No 46CV-25-278-3, this summons is for UTC RAILCAR REPAIR SERVICES, LLC.**

# PROOF OF SERVICE

☐ I personally delivered the summons and complaint to the individual at ______________________________[place] on ______________________[date]; or

☐ I left the summons and complaint in the proximity of the individual by ______________ ______________________after he/she refused to receive it when I offered it to him/her; or

☐ I left the summons and complaint at the individual's dwelling house or usual place of abode at ______________________________ [address] with ______________________ [name], a person at least 18 years of age who resides there, on ______________[date]; or

☐ I delivered the summons and complaint to ______________________[name of individual], and agent authorized by appointment or by law to receive service of summons on behalf of ______________________________[name of defendant] on ______________[date]; or

☐ I am the plaintiff or an attorney of record for the plaintiff in this lawsuit, and I served the summons and complaint on the defendant by certified mail, return receipt requested, restricted delivery, as shown by the attached signed return receipt.

☐ I am the plaintiff in this lawsuit, and I mailed a copy of the summons and complaint by first-class mail to the defendant together with two copies of a notice and acknowledgment and received the attached notice and acknowledgement form within twenty days after the date of mailing.

☐ Other [specify]: ______________________________________________

☐ I was unable to execute service because: ______________________________________________

My fee is: $____________

**To be completed if service is by a sheriff or deputy sheriff:**

Date: ______________ SHERIFF OF ________________COUNTY, ARKANSAS

By: ______________________________________________
[Signature of server]

______________________________________________
[Printed name, title, and badge number]

**To be completed if service is by a person other than a sheriff or deputy sheriff:**

Date: ______________ By: ______________________________________________
[Signature of server]

______________________________________________
[Printed name, title, and badge number]

Address:

______________________________________
______________________________________
______________________________________

Phone:

______________________________________

Subscribed and sworn to before me this date: ______________

______________________________________________
[Notary Public]

My commission expires: ______________

Additional information regarding service or attempted service:

______________________________________________________________________________
______________________________________________________________________________
______________________________________________________________________________

**Case Title:** RACHEAL CEULLAR V UTC RAILCAR REPAIR SERVICES, LLC

**Case Number:** 46CV-25-278

**Type:** SUMMONS - FILER PREPARED

So Ordered

Penny Kilcrease

ELECTRONICALLY FILED
Miller County Circuit Court
Penny Kilcrease, Circuit Clerk
2025-May-16 08:49:13
46CV-25-278
C08SD03 : 8 Pages

**IN THE CIRCUIT COURT OF MILLER COUNTY, ARKANSAS**
**CIVIL DIVISION**

**RACHEAL CUELLAR** **PLAINTIFF**

**V.** **CASE NO. ________________**

**UTC RAILCAR REPAIR SERVICES, LLC** **DEFENDANT**

**COMPLAINT**

COMES NOW, the Plaintiff, Racheal Cuellar, by and through her attorney Bradley Hull of Hickey and Hull Law Partners, and for her Complaint does state and allege:

## I. PARTIES AND JURISDICTION

1. The Plaintiff, Racheal Cuellar, ("Plaintiff") is an individual who resides in the State of Arkansas, in Texarkana, Arkansas in Miller County, Arkansas. At all relevant times, Plaintiff was a resident of Miller County, Arkansas.

2. The Defendant, UTC Railcar Repair Services, LLC, ("the Defendant" or "UTC") is a Limited Liability Company originally formed in the State of Delaware. The Defendant is a registered Foreign Limited Liability Company in the State of Arkansas. The Defendant's registered address in Arkansas is 300 S. Spring Street, Little Rock, Arkansas 72201. The Defendant's foreign address on file with the State of Arkansas is 175 W. Jackson Blvd., 21st Floor, Chicago, Illinois 60604.

3. The Defendant's Arkansas business operation is primarily operated at 2801 Nash-Thompson Lane, Texarkana, Arkansas 71854.

4. The Plaintiff brings this action under the Arkansas Civil Rights Act of 1993, Ark. Code § 16-123-101, *et seq.*

5. Venue and jurisdiction is proper herein.

6. Plaintiff has fully exhausted all administrative remedies.

## II. BACKGROUND

7. The Plaintiff began working for Defendant at its Texarkana, Arkansas facility in or around November 2023.

8. The Plaintiff served as the Repair Supervisor until her termination on or about October 4, 2024.

9. The Plaintiff timely filed a Charge of Discrimination with the Equal Employment Opportunity Commission. She received a Determination and Notice of Rights from the EEOC on February 27, 2025.

10. The Defendant operates a railcar cleaning operation.

11. In her role as Repair Supervisor, the Plaintiff performed duties that included performing training meetings, reviewing other employees, consulting safety data and information, reviewing and implementing compliance procedures, and managing her subordinate employees. Her primary responsibility was to ensure that her team properly cleaned the inside of tank cars post transit.

12. Ms. Cuellar excelled in her job with Defendant.

13. Ms. Cuellar's performance met all expectations. She was often even tasked with doing things beyond her normal duties. For example, she provided the additional benefit of

being able to translate with contractors that spoke Spanish – which happened on multiple occasions; she stepped in for Safety, Health & Environmental management to guide an audit; and she stepped in for the Human Resources department on occasion to help with terminations.

14. Ms. Cuellar was the only female supervisor at the Defendant's Arkansas facility.

15. Ms. Cuellar observed that in the meetings with the other supervisors (all of whom were male), they treated each other differently than how they treated her. On more than one occasion, she could observe a difference in their overall demeanor when she entered the room.

16. The other non-supervisor employees and peers of Ms. Cuellar at the Defendant's Texarkana facility were predominantly male.

17. Ms. Cuellar observed that other supervisors were given accommodation that she was not given. For example, she was the only supervisor with multiple departments. She also was told that she would be provided a golf cart to assist her with her daily walk from the parking lot to her office, since her office was the furthest from the parking lot (nearly a mile long walk); the golf cart was purchased by Defendant but then given to another male supervisor instead of her.

18. Ms. Cuellar had a colleague make multiple comments that related to her gender. For example, on one occasion he commented on the fact that she was braiding her hair. She had to step away from him because he made a move indicating he intended to touch her braided hair.

19. Another supervisor commented to Ms. Cuellar, "OK, Girl!" during a discussion between the two.

20. In or about August 2024, a co-worker made inappropriate remarks to Ms. Cuellar. He referred to her in a derogatory manner clearly related to her gender. In particular, the co-worker referred to Ms. Cuellar as sweetheart.

21. Ms. Cuellar reported the co-worker's comments to Defendant's Human Resources (HR) department. Defendant took no action against the co-worker other than to have him apologize to Ms. Cuellar.

22. The co-worker provided an insincere apology to Ms. Cuellar. Instead of taking responsibility, he essentially made excuses and tried to convince Ms. Cuellar that his comment was acceptable.

23. Following the incident, Ms. Cuellar's colleague made a comment towards her that since this incident had occurred, he had "made a mental note of how [he] can address [her]." The implication being that he had otherwise assumed it was acceptable to refer to his female colleagues as sweetheart or similar terms.

24. From the time she reported her co-worker's comments until her termination, Ms. Cuellar observed additional hostility towards her by the other male supervisors and her male superiors.

25. On or about October 4, 2024, the Defendant suspended Ms. Cuellar for allegedly failing to properly report a safety incident. Ms. Cuellar was terminated the next day. Defendant explicitly stated the reason for termination was based on its investigation of a "safety incident" that occurred on October 2, 2024.

26. Prior to October 2, 2024, the Defendant had not issued any warnings, negative performance reviews, etc. regarding Ms. Cuellar's job performance.

27. Ms. Cuellar had previously reported that a forklift was not functioning properly. On or about October 2, 2024, the forklift had a piece fall off of it. The forklift was damaged but no other equipment was damaged, and no employees were harmed in any manner. Ms. Cuellar did not report this as a safety incident but instead made the rational decision to report to maintenance that the forklift had broken and needed repair. Ms. Cuellar's handling of the situation was done in the manner that she previously had been instructed by the Area Manager.

28. Upon information and belief, subsequent to Ms. Cuellar's termination, the forklift malfunctioned again in a similar manner; the forklift was again turned over to maintenance with no safety report but no employees were disciplined or terminated.

29. The Defendant's purported reason for termination relies on a strained and unreasonable interpretation of its incident reporting policy, which is also not consistent with the manner in which it has been previously applied.

30. The Plaintiff is aware of a male co-worker that blatantly violated the Defendant's safety policy by locking the door of a rail car while inside, which the Plaintiff had been informed should be an immediate termination. The male co-worker did not report the violation. Upon learning of the violation, the Defendant did not terminate this male employee. Instead, Ms. Cuellar's male co-worker was not subjected to any formal discipline (it is possible that he received a verbal coaching).

31. During her tenure, the Plaintiff also supervised a male employee who had previously been a supervisor but had been demoted due to continued mistakes while in his supervisory role. Notably, the male employee was demoted rather terminated. The Defendant did not offer the Plaintiff a demotion when they terminated her.

32. Upon information and belief, other male employees of the Defendant have been found to have committed clear safety policy violations without severe disciplinary actions and at times without at any disciplinary actions.

33. Upon information and belief, the Defendant did not apply its safety policy to male employees in the same manner in which it applied it to the Plaintiff.

## III. COUNTS

### COUNT I - DISCRIMINATION IN VIOLATION OF ARKANSAS CIVIL RIGHTS ACT OF 1993

34. The Plaintiff reincorporates each of the statements and facts alleged in the paragraphs above as though set forth fully herein.

35. On information and belief, the Defendant is a covered employer under the Arkansas Civil Rights Act of 1993 ("ACRA") Ark. Code § 16-123-102(7).

36. The Plaintiff is a covered employee under the ACRA. Ark. Code § 16-23-102(6).

37. The Plaintiff reincorporates each of the statements and facts alleged in the Paragraphs above as though set forth fully herein.

38. The ACRA prevents employment discrimination based on the employee or applicant's membership of a protected class or classes. Ark. Code § 16-123-101, *et seq*.

39. The Defendant took adverse action against the Plaintiff by terminating her.

40. The policy underlying the Plaintiff's termination was not applied in the same manner to other employees, and, in particular, was applied differently to male employees.

41. Even if the policy did require the Plaintiff to report the damage that occurred to the forklift, the Defendant's purported reasons for the Plaintiff's termination are still a mere

pretext for discrimination as evidenced by the Defendant's discriminatory and inconsistent enforcement of the policy.

42. Thus, the Plaintiff was impermissibly discriminated against based on her gender in violation of the ACRA.

**COUNT II - RETALIATION IN VIOLATION OF**
**ARKANSAS CIVIL RIGHTS ACT OF 1993**

43. The Plaintiff reincorporates each of the statements and facts alleged in the Paragraphs above as though set forth fully herein.

44. The ACRA prevents retaliation against individuals based on the individual's good faith opposition to practices made unlawful by the ACRA. Ark. Code § 16-123-108(a).

45. As established in the above Paragraphs of this Complaint, the Plaintiff reported workplace misconduct related to her sex in good faith believing them to be unlawful.

46. As established in the above Paragraphs of this Complaint, the Defendant retaliated against the Plaintiff for these good faith reports.

47. The Defendant's purported reasons for taking the aforementioned actions are a mere pretext for the Defendant's retaliation against the Plaintiff.

48. Thus, the Defendant impermissibly retaliated against the Plaintiff in violation of the ACRA.

49. The Plaintiff requests a jury trial.

WHEREFORE, the Plaintiff prays that this Court enter a judgment against the Defendant; for an award of post judgment interest at the maximum allowable rate under the law; for appropriate backpay; for compensation for past and future pecuniary losses; for compensation for past and future nonpecuniary losses (including emotional pain and suffering,

inconvenience, and mental anguish); for punitive damages; for reasonable attorney fees and costs; and for any other relief for which the Plaintiff may be entitled.

Respectfully Submitted,
Racheal Cuellar, Plaintiff

By: /s/ Bradley Hull
Bradley Hull, ABA #2017126
HICKEY AND HULL LAW PARTNERS
502 Garrison Avenue
Fort Smith, AR 72901
P: (479) 434-2414
F: (479) 434-2415
brad@kevinhickeylaw.com

**VERIFICATION**

I, Racheal Cuellar, having first been duly sworn, state upon oath that I have read the above and foregoing pleading, and that the facts contained therein are true and correct to the best of my knowledge, information, and belief.

Racheal Cuellar
Racheal Cuellar

SUBSCRIBED AND SWORN TO before me, the undersigned Notary Public, on this 15th day of May, 2025.

NOTARY PUBLIC

My Commission Expires:

4-1-26

(SEAL)

HOLLIE UPCHURCH
Notary Public - Arkansas
Miller County
Commission # 12697520
My Commission Expires Apr 1, 2026